

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-16-00190-CV
_____

IN THE INTEREST OF E.N. AND J.N., CHILDREN

On Appeal from the 108th District Court
Potter County, Texas
Trial Court No. 86,260-E, Honorable Douglas Woodburn, Presiding

August 22, 2016

## MEMORANDUM OPINION

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

N.D., the mother of E.N. and J.N.,[1] appeals the trial court's judgment terminating her rights to the children.[2]  N.D. presents one issue to the Court for consideration.  By her issue, N.D. contends that the evidence is factually insufficient to support the trial court's finding that termination of her parental rights is in the best interest of the children.  *See* TEX. FAM. CODE ANN. § 161.001(b)(2) (West Supp. 2016).[3]  We will affirm.

_____

[1] Pursuant to the Texas Rule of Appellate Procedure 9.8, we will refer to the parties and the children by initials only.

[2] The father, A.N., filed an affidavit of relinquishment and is not a party to this appeal.

[3] Further reference to the Texas Family Code will be by reference to "section _____" or "§ _____."

## Factual and Procedural Background

When N.D. arrived at the hospital on November 5, 2014, to deliver her child, J.N., she was demonstrating erratic behavior that concerned the hospital staff. Later that day, N.D. gave birth to J.N. The hospital ran a drug screen on N.D. and a meconium drug screen on J.N. and both tested positive for methamphetamine.

At the request of N.D., hair follicle tests were run on her older child, E.N., and the results were positive for methamphetamine. At N.D.'s request, the Department of Family and Protective Services (Department) ran a second hair follicle test on E.N. and the results again were positive for methamphetamine. N.D. told the Department's investigator that she had only tried methamphetamine once and she could not understand why E.N. would test positive. After receiving the results from the drug tests, the Department instigated removal proceedings as to both E.N. and J.N.

The Department filed its original petition for protection of a child, for conservatorship, and, in the alternative, for termination in suit affecting the parent-child relationship on November 14, 2014. The Department was appointed temporary managing conservator of the children on November 25, 2014, following an adversary hearing. The children were initially placed with N.D.'s sister; however, they were removed and placed into foster care when it became apparent the sister would not pass a home study.

The Department conducted a family group conference to prepare a service plan whereby N.D. could regain the custody of her children. N.D. participated in the conference and signed documentation agreeing to the service plan. The service plan

contained nine items that N.D. was required to complete to fully comply with the plan. They were as follows:

(1) Obtain and maintain stable housing;

(2) Obtain and maintain stable employment sufficient to meet her and the children's needs for a minimum of six months;

(3) Provide information to the Department within five days of any change in residence, phone number, or employment;

(4) Complete a substance abuse assessment with OSAR[4] and follow any recommendations;

(5) Attend parenting classes;

(6) Participate in a psychological evaluation;

(7) Complete rational behavior therapy;

(8) Attend individual counseling, a minimum of six sessions; and

(9) Maintain a drug-free lifestyle and submit to random drug testing.

At trial, Mary Zahler, the Department caseworker, testified that N.D. failed to complete the required services. N.D. also testified that she failed to complete all of the required services. N.D. failed to maintain stable employment. At the time of trial, she was unemployed and had been so for a period of time. N.D. completed her rational behavioral therapy; however, after completing the class she took her daughter, who was not a child subject to this proceeding, out of an after-school program without the permission of the father, who was the custodial parent. N.D. ended up taking the child to an emergency room for unknown reasons. As to her individual counseling sessions, N.D. completed five of the required six sessions, but the counseling was suspended on the recommendation of the counselor until such time as N.D. had completed drug

---

[4] Outreach, Screening, Assessment and Referral Center.

treatment.  N.D. failed to submit herself for drug testing on a number of occasions, and, on all of the occasions she did submit for testing, she tested positive for the presence of drugs.

Roberta Bobbie Allen was appointed to provide individual counseling therapy for N.D.  Allen testified that, at the first session, N.D. admitted to abusing controlled substances, primarily marijuana and cocaine.  Allen further testified that N.D. had significant problems with admitting that she was addicted to controlled substances.  Additionally, N.D.'s attendance at the counseling sessions was sporadic.  N.D. attended her first session with Allen on April 29, 2015, and then failed to attend follow-up sessions scheduled for May 13 and May 20, 2015.  Allen did not see N.D. again until a session on September 8, 2015.  While discussing what N.D. had done to address her substance addiction since the first meeting, N.D. stated she had started the ACADA[5] program twice but dropped out because she felt it was a poor fit and she felt uncomfortable.  Allen opined that this behavior was a simple avoidance technique on the part of N.D.  Allen suggested that N.D. try the Celebrate Recovery program offered through local churches.  At a later session, N.D. reported that she did not like that program and she did not think it fit her.  This reinforced Allen's belief that N.D. was simply employing an avoidance technique to avoid facing her substance abuse issues.

At the third session with Allen on September 26, 2015, N.D. told Allen that she finally admitted and accepted the fact that she was an addict.   When N.D. returned for her fourth session with Allen, she indicated that she had tried a twelve-step program but discontinued attendance because she felt that program was too far along to meet her needs.   At the final counseling session on October 29, 2015, N.D. appeared

_____
[5] Amarillo Council on Alcoholism and Drug Abuse.

4

"disheveled" and was "guarded" in her discussion with Allen. Allen opined that this was a regression from her last visit. During this visit, N.D. reverted to her former opinion that she was not ready to accept that she was an addict. Further, Allen testified that N.D. had difficulty during the session tracking the thread of any conversation. Allen opined that this difficulty could have been the result of substance use. This opinion was confirmed the following day when N.D. tested positive for methamphetamine.

Following the October 29 session, N.D. cancelled sessions scheduled for November 9 and November 16. As a result of N.D.'s lack of progress, Allen recommended that N.D. receive inpatient care and discontinue her outpatient therapy sessions.

At trial, Allen opined that she would have concerns returning the children to N.D.'s custody. This was based upon the continuing issue with substance abuse and the resultant safety concerns for the children that the continued substance abuse would generate.

N.D. testified at the final hearing that she was requesting additional time to complete an inpatient rehabilitation treatment program. She further admitted that she had used drugs as recently as fifteen days before the final hearing. When asked if she could pass a drug test on the day of the final hearing, she replied that she could not. N.D. testified that she had submitted a new OSAR assessment two weeks before the final hearing and was just waiting for a bed to open up to begin the program. However, when asked if she brought any paper work to court that would corroborate either her OSAR testing or the fact that she had been admitted into the program subject to bed availability, she was unable to provide any records.

N.D.'s testimony about her plans for the children were nebulous at best. Although she continues to live in the same apartment she has lived in for the preceding nine years, she was not employed on the date of the final hearing. N.D. stated she still had her license to be an L.V.N. and a phlebotomist and was going to attempt to get back into nursing. However, she did admit on cross-examination that she had not worked in nursing for the preceding five or six years. She was also forced to admit that, on that date, she would not pass a drug screening if she were to apply. By her own testimony, N.D. admitted she had a very poor support system in place to assist her with the children.

When testifying about E.N. and J.N.'s current placement in foster care, Zahler testified that the children are doing "really well" and that the foster parents have bonded to the children. Further, Zahler testified that the foster parents have been very proactive in seeking medical care for E.N. because of some issues regarding his hearing.

At the conclusion of the testimony, and after receiving the recommendations of the Department and the CASA volunteer, the trial court found by clear and convincing evidence that N.D.'s parental rights should be terminated. The trial court found that the evidence proved that N.D. committed the following predicate acts enumerated in section 161.001(b)(1): subsections (D), (E), (I), (O), (P), and (R). *See* § 161.001(b)(1)(D), (E), (I), (O), and (R). Further, the trial court found by clear and convincing evidence that it was in the best interest of the children to terminate N.D.'s parental rights. *See* 161.001(b)(2).

N.D. has perfected her appeal and presents a single issue for our consideration. N.D. contends that the evidence is factually insufficient to support the trial court's

determination that it was in the best interest of the children to terminate her parental rights.  Disagreeing with appellant, we will affirm the trial court's judgment.

Standard of Review

The natural right existing between parents and their children is of constitutional dimensions.  *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985); *see Santosky v. Kramer*, 455 U.S. 745, 758–59, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982).  A decree terminating this natural right is complete, final, irrevocable, and divests for all time that natural right as well as all legal rights, privileges, duties, and powers between the parent and child except for the child's right to inherit.  *Holick*, 685 S.W.2d at 20.  That being so, we are required to strictly scrutinize termination proceedings.  *In re G.M.,* 596 S.W.2d 846, 846 (Tex. 1980).  However, parental rights are not absolute, and the emotional and physical interests of a child must not be sacrificed merely to preserve those rights.  *In re C.H.,* 89 S.W.3d 17, 26 (Tex. 2002).

The Texas Family Code permits a court to terminate the parent-child relationship if the petitioner establishes both (1) one or more acts or omissions enumerated under section 161.001(b)(1), and (2) that termination of the parent-child relationship is in the best interest of the child.  § 161.001(b).  Though evidence may be relevant to both elements, each element must be proved, and proof of one does not relieve the burden of proving the other.  *See In re C.H.,* 89 S.W.3d at 28.  While both a statutory ground and best interest of the child must be proved, only one statutory ground is required to terminate parental rights under section 161.001(b).  *See In re A.V.,* 113 S.W.3d 355, 362 (Tex. 2003).  Therefore, we will affirm the trial court's judgment of termination if legally and factually sufficient evidence supports any one of the grounds found in the

7

judgment, provided the record shows that it was also in the best interest of the child for the parent's rights to be terminated. *See id.*

Due process requires the application of the clear and convincing standard of proof in cases involving involuntary termination of parental rights. *In re J.F.C.,* 96 S.W.3d 256, 263 (Tex. 2002); *see* § 161.206(a) (West 2014). "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." § 101.007 (West 2014). This standard, which focuses on whether a reasonable jury could form a firm belief or conviction, retains the deference a reviewing court must have for the factfinder's role. *In re C.H.,* 89 S.W.3d at 26.

When reviewing the factual sufficiency of the evidence supporting a judgment of termination, we determine "whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the [Department]'s allegations." *Id.* at 25. In conducting this review, we consider whether the disputed evidence is such that a reasonable factfinder could not have resolved the disputed evidence in favor of its finding. *In re J.F.C.,* 96 S.W.3d at 266. "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id.*

### Best Interest of the Children

N.D.'s single issue is that the evidence was factually insufficient to support the trial court's determination that termination of her parental rights was in the best interest of the children. We will, therefore, review the trial court's determination pursuant to the

8

guidance of the Texas Supreme Court in *Holley v. Adams,* 544 S.W.2d 367, 371–72 (Tex. 1976).

There is a strong presumption that a child's interest is best served by preserving the conservatorship of the parents; however, clear and convincing evidence to the contrary may overcome that presumption. *See In re R.R.,* 209 S.W.3d 112, 116 (Tex. 2006) (per curiam). The Texas Supreme Court has recognized a non-exhaustive list of factors that are pertinent to the inquiry whether termination of parental rights is in the best interest of the child: (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *See Holley,* 544 S.W.2d at 371–72; *see also* § 263.307 (West Supp. 2016) (providing extensive list of factors that may be considered in determining child's best interest). In examining the best interest of the child, we may consider evidence that was also probative of the predicate act or omission. *See In re C.H.* 89 S.W.3d at 28. The best interest determination may rely on direct or circumstantial evidence, subjective facts, and the totality of the evidence. *In re N.R.T.,* 338 S.W.3d 667, 677 (Tex. App.—Amarillo 2011, no pet.).

We begin our analysis with the understanding that N.D. does not contest the trial court's findings of clear and convincing evidence of a number of predicate acts that

9

support its determination to terminate N.D.'s parental rights. Unchallenged predicate findings are binding on the appellate court. *In re K.M.,* No. 07-16-00120-CV, 2016 Tex. App. LEXIS 6886, at *6 (Tex. App.—Amarillo June 29, 2016, no pet.) (mem. op.). Of particular concern, for purposes of our analysis, is the trial court's findings that N.D. knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endangered the physical or emotional well-being of the children, § 161.001(b)(1)(D); engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangers the physical or emotional well-being of the children, § 161.001(b)(1)(E); failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the children who has been in the temporary managing conservatorship of the Department, § 161.001(b)(1)(O); used a controlled substance, as defined by Chapter 481, Health and Safety Code, in a manner that endangered the health or safety of the children, § 161.001(b)(1)(P); and been the cause of the child being born addicted to alcohol or a controlled substance, other than a controlled substance legally obtained by prescription. The fact that these findings go unchallenged are probative evidence that termination is in the best interest of the child. *See In re E.C.R.,* 402 S.W.3d 239, 249–50 (Tex. 2013) (citing *In re C.H.,* 89 S.W.3d at 28).

Turning to an analysis of the *Holley* factors, we first look at the desires of the children. At the time of trial, the children, were approximately two- and one-year old. At such an age, they are too young to express their desires. However, there was evidence in front of the trial court that the children had bonded with their foster family. Such a bonding may be considered by the trial court when the children are too young to express a desire and are otherwise well-cared for by the foster family and have spent a

minimal amount of time with a parent. *See In re S.R.,* 452 S.W.3d 351, 369 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). Under the facts of our case, the Department removed the children within days of J.N.'s birth. At the time of trial, there was evidence that J.N. had not seemed to bond with N.D. and that, because of her continued drug abuse, N.D. had not had visitation with the children for at least five months. Therefore, under the evidence, the desires of the child factor weighs in favor of the trial court's best interest determination.

We will review the emotional and physical needs of the children now and in the future and the emotional and physical danger to the children now and in the future together. The record reveals that, at the time of J.N.'s birth, he tested positive for methamphetamine. At the time of his testing, N.D. and the other child, E.N., also tested positive for methamphetamine. Throughout the sixteen-month course of these proceedings, N.D. never took a drug test in which she did not test positive for some controlled substance. In addition, there were numerous times when N.D. refused to be tested which leads to the conclusion that she would have tested positive, had she submitted to the testing. *See In re K.C.B.,* 280 S.W.3d 888, 895 (Tex. App.—Amarillo 2009, pet denied). Further, N.D. admitted while testifying that, on the date of the trial, she could not pass a drug test. These are important matters in weighing this particular *Holley* factor.

A parent's admissions and past history are relevant to the best interest determination. *See In re D.M.,* 58 S.W.3d 801, 814 (Tex. App.—Fort Worth 2001, no pet.). The trial court is allowed to consider the parent's history of drug use and irresponsible choices. *See In re J.O.A.,* 283 S.W.3d 336, 345 (Tex. 2009) (holding that

a parent's use of narcotics may qualify as an endangering course of conduct). Further, continued drug use during the pendency of the proceedings is evidence of an inability to provide for a stable environment and provide for the children's emotional and physical needs. *See In re Y.G.,* No. 07-11-00349-CV, 2012 Tex. App. LEXIS 1572, at *19 (Tex. App.—Amarillo Feb. 29, 2012, no pet.) (mem. op.). The record further reveals that N.D. has not maintained any stable employment during the pendency of these proceedings and has failed to comply with the court-ordered service plan. These factors support the proposition that N.D. would continue her endangering conduct despite her denials at trial. *See In re J.D.,* 436 S.W.3d 105, 119 (Tex. App.—Houston [14th Dist.] 2014, no pet). Our review of the record leads us to the conclusion that the evidence weighs heavily in favor of the trial court's determination of the best interest of the children.

The next *Holley* factor looks at the parental abilities of the individuals seeking custody. In reviewing the evidence cogent to this factor, we may consider a parent's previous neglect or inability to meet the children's physical and emotional needs. *See In re Y.G.,* 2012 Tex. App. LEXIS 1572, at *19. The failure of a parent to avail herself of the programs offered by the Department is evidence that the parent lacks the desire to better her parenting capabilities. *See In re W.E.C.,* 110 S.W.3d 231, 245 (Tex. App.—Fort Worth 2003, no pet.).

Although D.N. testified that she had completed many of the requirements of the court-ordered service plan, the fact remains that the root problem—drug dependency—had not been addressed. This permeates the entire proceeding. Until this issue is addressed, we are left with the proposition that N.D. will put her desires before the needs of the children.

Additionally, the testimony reveals that the children are doing very well with the foster family. The testimony was that they have bonded to their foster parents and the foster parents have taken clear steps to protect the children and ensure their health. Accordingly, this factor weighs heavily in favor of termination being in the best interest of the children.

Regarding the plans for the children and the stability of the proposed placement, the record is equally clear. First, N.D. testified that although she had a three-bedroom apartment with lowered rent, she did not have any support within the community. Further, N.D. was unemployed. N.D. posited that she would go back to nursing, as she still has her license. However, upon cross-examination, N.D. admitted that, as of the date of the trial, she could not pass a drug screen that would be required to obtain a nursing position. In essence, N.D.'s plans for the children were, at best, speculative. On the other hand, the Department's plan was for the foster family to adopt. Considering that the evidence reflected that the children were bonded to the foster family and included within the foster family's extended family gatherings and activities, this plan had specifics and definiteness to it. *See In re B.S.W.,* No. 14-04-00496-CV, 2004 Tex. App. LEXIS 11695, at *25 (Tex. App.—Houston [14th Dist.] Dec. 23, 2004, no pet.) (mem. op.). Further, N.D.'s plan for the children hinged upon the unfounded hope that she would defeat her dependency. The children would be in continued foster care while she hoped she could recover from her addiction. This would not be in the best interest of the children. *See id.* This *Holley* factor weighs heavily in favor of termination.

Looking at the next *Holley* factor, the acts or omissions of the parent which indicate that the existing parent-child relationship is not a proper one, we need not review the entire record. We have seen from the record that N.D. has continuously maintained a lifestyle that included drug abuse. J.N. was born addicted to methamphetamine. During the pendency of these proceedings, N.D. continued her drug abuse. She has not maintained any type of employment and has no real concrete plans for the children. This factor weighs heavily in favor of termination.

The last *Holley* factor is the excuses for acts and omissions. At trial, and during counseling, N.D. maintained that much of her drug addiction was linked to her unresolved grief over her mother's death. Missing from this proffered excuse is any testimony about what N.D. was doing or planning to do to resolve this issue. As presented, this excuse offers nothing that would cause us to alter our opinion. As such, this factor also weighs heavily in favor of termination.

From our review of the record, the evidence is factually sufficient to support the proposition that the trial court could reasonably form a firm belief or conviction that termination of N.D.'s parental rights was in the best interest of the children. *See In re C.H.,* 89 S.W.3d at 25. N.D.'s issue is overruled.

Conclusion

Having overruled N.D.'s single issue, we affirm the trial court's judgment terminating N.D.'s parental rights.

Mackey K. Hancock
Justice

14